## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

### Tallahassee Division

### Civil Action No.

**FLORIDA CHAPTER OF AMERICAN**
**ACADEMY OF PEDIATRICS, INC.,**

        **Plaintiff,**

**vs.**

**RANDY FINE in his capacity as Chair, Health &**
**Human Services Committee, Florida Legislature.**

        **Defendant.**

---

### PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY
### INJUNCTIONAND REQUEST FOR EXPEDITED CONSIDERATION

The Health & Human Services Committee of the Florida House of Representatives has served upon Plaintiff Florida Chapter of American Academy of Pediatrics ("AAP") a subpoena for documents to be returned no later than **May 4, 2023, at 10:00 a.m.** The subpoena informs the AAP that failure to comply may subject the AAP to contempt, punishable pursuant to constitutional and statutory provisions, which provisions provide penalties including imprisonment and fine.

This motion seeks a preliminary injunction staying the effectiveness of the

subpoena until the Court is able to hear this matter on the merits.

### Factual Background

 Senate Bill 254 passed the Florida Senate on April 4, 2023, and passed the

Florida House of Representatives on April 19, 2023. Among other things, the bill

prohibits medical practitioners from administering "sex-reassignment prescriptions

or procedures," with limited exceptions.

Five days after the House of Representatives passed Senate bill 254,

Defendant, acting in his capacity as Chair of the Health & Human Services

Committee, issued a subpoena to Plaintiff that demanded production of all

documents in Plaintiffs possession that:

> "contain or reflect communications … regarding the development,
> endorsement, and recommendation of the standards of care" "for the
> assessment, diagnosis, and treatment of gender dysphoria in children and
> adolescents;"

> "reflecting disagreement or skepticism, by [the AAP's] members or other
> practitioners, that the standards of care should include gender-affirming
> care;"

> "that evidence, reflect, or explain [the AAP's] … consideration and rejection
> of the view that the standards of care should not include gender dash
> affirming care;"

> "that reference social media, peer influence, or other social influences
> relating to gender dysphoria in children and adolescents."

[Exhibit A]

**Argument**

All the elements necessary for the issuance of a preliminary injunction are present in this case.

**There is a substantial likelihood that Plaintiff will prevail on the merits.**

The subpoena attempts to compel Plaintiff to disclose the communications, positions, and thought processes among its members with respect to a matter that has become the subject of public and political controversy.[1] It is well settled that the First Amendment prohibits government, in the absence of a compelling state interest, not only from directly suppressing speech and association, but from doing so indirectly by demanding disclosure of private communications or otherwise taking action that can reasonably be expected to intimidate persons into refraining from exercising their rights of speech and association. *See Buckley v, Valeo,* 424 U.S. 1, 14-15, 25 (1976)("The constitutional right of association explicated in *NAACP v. Alabama* … stemmed from the Court's  recognition that effective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association."); *NAACP v. Alabama*, 357 U.S. 449,

---

[1] The controversial nature of the subject is clearly set forth in the legislative staff analysis that accompanied the House companion bill to Senate Bill 254. [Exhibit B]

459, 462-463 (1958) ("This Court has recognized the vital relationship between freedom to associate and privacy in one's associations. Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs."); *Sweezy v. State*,  354 U.S. 234, 249 (1957) ("Merely to summon a witness and compel him, against his will, to disclose the nature of his past expressions and associations is a measure of governmental interference in these matters. These are rights which are safeguarded by the Bill of Rights and the 14th amendment.")

Compelling Plaintiff to produce all communications including those that reflect disagreement or skepticism or rejection of a particular viewpoint necessarily results in disclosure of the position of individual members with respect to a controversial political issue. Such compulsion not only violates the First Amendment rights of those individuals but can reasonably be expected to discourage future membership in the association.

**Plaintiff will suffer irreparable injury unless the injunction issues.**

"It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction."  *Cate v. Oldham,* 707 F. 2d 1176, 1188 (11th Cir. 1983). In this case Plaintiff and its members will not only suffer irreparable injury because of

the loss of their privacy and communications prior to consideration of the merits, but the invasion of their privacy cannot be corrected once the communications are made public.

**The threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party.**

The legislative history of Senate Bill 254 itself demonstrates that the state will suffer no damage from an injunction. In the first place, the Legislature has already passed a comprehensive law prohibiting gender-affirming treatment in most cases. Second, the thorough Treatment of the subject in the legislative staff analysis shows that the Legislature already had extensive evidence of both sides of the issue at the time Senate Bill 254 was voted upon. [Exhibit B] Third, the Senate and House considered and debated Senate Bill 254 and its House companion for more than 6 weeks with no apparent need for the information they now seek to compel. Fourth, the Legislature could have followed the practice that it has employed on thousands of bills for hundreds of years by hearing from interested experts and laypersons with experience and viewpoints on both sides of the issue without having to invade anyone's First Amendment rights. Finally, the Legislature's investigative power is limited to gathering information relevant to the purpose of the investigation. *Metz v. MAT Media, LLC,* 290 So. 3d 622 (Fla. 2020). The Legislature is not an executive body. It's purpose is to pass laws. In this case, it has already passed the law.

The Florida Supreme Court's statement in *Metz* is apropos: "Yet broad as it is, the legislative power to investigate is not unlimited. 'Moderation, restraint and caution should be the rule in exercising it. If not circumscribed by reasonable limitations it is one which could lead to abuses and attendant encroachment on individual liberties.'" *Metz,* 290 So. 3d at 627.

**The public interest will not be harmed if the injunction is issued.**

It is difficult to conceive how the public interest would be harmed by the inability of the legislative committee to obtain the subpoenaed information considering that the House had no trouble passing Senate Bill 254 in the absence of the information.

s/Barry Richard
**BARRY RICHARD** (Fla. Bar 105599)
Barry Richard Law Firm
101 East College Avenue
Tallahassee, FL 32301
barryrichard@barryrichard.com
dawnkrow@barryrichard.com